**EL PUEBLO DE PUERTO RICO**, demandante y apelado, *v.* HORACIO FIGUEROA, acusado y apelante.

No. 5467 *

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF

Disiento.

*Czarra v. Board of Medical Supervisors*, 25 App. D.C. 443. En la página 447 la corte hace un resumen de los hechos en la siguiente forma:

---

* NOTA: Véase la opinión de la mayoría en la página 754.

"El apelante fué llevado primeramente ante la junta de inspectores médicos en enero, 1904, y al acusársele de conducta lesiva a la profesión y deshonrosa por distribuir literatura pornográfica, se ordenó se le cancelara la licencia. La literatura obscena consistía en un folleto que tendía a relatar la causa, prevención y cura, entre otras cosas, de enfermedades venéreas y secretas, y de ciertas costumbres y prácticas impúdicas e indecentes. En apelación para ante este tribunal la orden fué revocada por insuficiencia de la querella. Czarra v. Medical Supervisors, 24 App. D.C. 251."

En el caso de *United States* v. *Capital Traction Co.*, 34 App. D.C. 592, la corte dice a la página 597:

"Este tribunal en el caso de Czarra v. Medical Supers. 25 App. D.C. 443, interpretando un estatuto que proveía que cualquier persona que hubiere obtenido una licencia de la junta estaría sujeta a que la misma le fuese revocada al ser declarada culpable de conducta deshonrosa y lesiva a la profesión, dijo: 'La única cuestión a determinarse es si independientemente de las causas mencionadas, "conducta deshonrosa y lesiva a la profesión", tal como se declara en la ley, son suficientemente específicas y ciertas para justificar una convicción, y para el ejercicio del poder de cancelar licencias poseído por la junta de inspectores médicos. . . . En toda causa criminal el derecho del acusado a ser informado de la naturaleza y causa del delito que se le imputa, le está reservado por la Enmienda Sexta. A fin de que pueda estar así informado por la acusación presentada contra él, el requisito primordial y básico es que el delito u ofensa que se le imputa haya sido definido con razonable certeza. Debe haber sido informado por la ley al igual que por la acusación, de qué actos o conducta están prohibidos y son punibles. En el ejercicio de su facultad para reglamentar la conducta del ciudadano, dentro de las limitaciones constitucionales, y para declarar qué constituye un delito u ofensa penable, la legislatura debe informarle con razonable precisión qué actos se intenta prohibir.' "   .

Empero, en el caso de Czarra la corte también dijo:

" 'Todo hombre debe estar en posición de saber con certeza cuándo está cometiendo un delito.' " United States v. Reese, 92 U.S. 214, 220, 23 L. Ed. 563, 565,

y luego siguió diciendo:

"Este deber claro ha de ser ejercido por la legislatura misma y

no puede delegarse al poder judicial. Indudablemente el mismo puede efectuarse mediante el uso de palabras o frases de significado ya establecido o que indiquen delitos bien conocidos y definidos por el derecho común. Certeza razonable, en vista de las circunstancias, es cuanto se exige, y al ser posible debe darse siempre efecto liberal a la intención legislativa. Pero cuando la legislatura declara un delito en palabras de significado indeterminado, o su lenguaje es tan general e indefinido que puede abarcar en su significación no sólo actos reconocidos de ordinario como reprensibles, sino también otros que sería irrazonable presumir se tuvo la intención de castigar, las cortes, que no poseen una discreción arbitraria para hacer un discrimen entre aquellos actos que se tuvo la intención y los que no se intentó castigar, no pueden hacer otra cosa que declarar el estatuto nulo por incertidumbre.''

Y más adelante en el caso de Czarra la corte manifestó:

''Indudablemente toda persona inteligente y razonable, convendrá con la opinión de la junta de inspectores médicos, en que el acto imputado al apelante en el presente caso equivalía tanto a conducta lesiva a la profesión como deshonrosa. Pero esto no es la prueba a que se somete la validez de la cláusula específica del estatuto. La cuestión fundamental envuelta en todos los casos que pueden surgir, es si las cortes pueden sostener y hacer cumplir un estatuto cuya fraseología, amplia e indefinida, puede ser aplicada no sólo a determinado acto, sobre el cual existe poca o ninguna divergencia de criterio, si que igualmente a otros respecto a los cuales podría haber diferencias radicales, llevando así a los tribunales que están investidos con la aplicación de la ley, el ejercicio de un poder arbitrario de discrimen, entre las varias clases de actos.''

De *United States* v. *Capital Traction Co.*, supra, podemos citar del sumario lo siguiente:

''Una ley del Congreso que castigue como delito el hecho de que cualquier compañía ferroviaria en el Distrito de Columbia opere un número insuficiente de carros para acomodar las personas que deseen montar en los mismos, sin aglomeración, es demasiado indefinida e incierta en su definición del delito que se trata de crear para sostener una acusación. (Interpretando la sección 16 de la Ley del Congreso de mayo 23, 1908, 35 Stat. at L. 246, capítulo 190, y siguiendo el caso de Czarra v. Medical Supers. 25 App. D.C. 443).''

Y en la página 598 hallamos lo que sigue:

"En una causa criminal deben exponerse y definirse los elementos que constituyen el delito con tal claridad que sólo admitan razonablemente una interpretación. De lo contrario, habría falta de uniformidad en su cumplimiento. La línea divisoria entre lo que es legal y lo que es ilegal no puede dejarse a conjeturas. No puede hacerse que los ciudadanos respondan de estatutos penales cuyas disposiciones son tan inciertas que admiten razonablemente diversas interpretaciones. Un estatuto penal no puede descansar sobre una base incierta. El delito y los elementos que le constituyen deben estar tan claramente expresados que una persona corriente pueda elegir inteligentemente por anticipado qué curso puede seguir de acuerdo con la ley. Los estatutos penales que prohiben la realización de ciertos actos y disponen un castigo por su infracción, no deben estar sujetos a doble interpretación, de tal suerte que el ciudadano pueda concebir sus requisitos en una forma y las cortes en otra. Conforme se dijo en United States v. Reese, 92 U.S. 214, 23 L. Ed. 563: 'Si con el estatuto la legislatura trata de definir un nuevo delito, y castigar su infracción, ella debe expresar su voluntad en lenguaje tal que no lleve a engaño al ciudadano de inteligencia ordinaria. Toda persona debe saber con certeza cuándo es que está cometiendo un delito. . . . Sería realmente peligroso si la legislatura pudiera construir una red lo suficientemente grande para prender a todos los posibles infractores, y dejara que las cortes intervinieran para decir quiénes están legalmente detenidos y quiénes deben ser puestos en libertad. Esto, hasta cierto punto, sustituiría el poder legislativo con el judicial.' "

*United States* v. *L. Cohen Grocery Co.*, 255 U.S. 81, es un caso en que los dos primeros sumarios leen así:

"La sección 4 de la Ley sobre el Control de Alimentos, de agosto 10, 1917, según fué enmendada en octubre 22, 1919, al castigar y prescribir una pena de multa o prisión para cualquier persona que 'fije un precio injusto e irrazonable para cualquier artículo de primera necesidad en que trafique', debe ser interpretada en el sentido de que prohibe y castiga el exigir un precio excesivo en la compraventa de cualquier artículo de consumo corriente.

"Toda vez que no determina un grado fijo de culpabilidad, la sección a ese respecto es contraria a las Enmiendas Quinta y Sexta de la Constitución, que exigen un debido proceso de ley y que las personas acusadas de delito sean debidamente informadas de la naturaleza y causa de la acusación."

En dicho caso el acusado presentó excepción perentoria basada prácticamente en que el estatuto era tan indefinido que no permitía conocer qué era lo que se prohibía, y por ende, equivalía a una delegación por parte del Congreso del poder legislativo a las cortes y jurados a fin de que éstos determinaran qué actos debían ser considerados delictivos y punibles. La Corte Suprema de los Estados Unidos cita de la opinión de la corte inferior en la siguiente forma (pág. 87):

"Por tanto, por ser la ley vaga, indefinida e incierta, y por no determinar un grado inmutable de culpabilidad, sino que deja tal grado a los diversos criterios de las distintas cortes y jurados que puedan ser llamados a hacerla cumplir, y por no informar al acusado de la naturaleza y causa de la acusación en su contra, soy de opinión que es constitucionalmente nula, y que la excepción perentoria interpuesta por el acusado debe ser declarada con lugar."

Entre otros casos la Corte Suprema cita el de *United States* v. *Capital Traction Co.*, 34 App. D.C. 592, supra. Entonces la corte siguió refiriéndose a otros casos que se insistía sostenían el criterio opuesto, indicando, a mi juicio, en la página 92, que en el caso que tenían ante sí no se había exigido grado (*standard*) alguno y la corte llegó a la conclusión que el estatuto era inconstitucional.

*Connally* v. *General Construction Company*, 269 U.S. 385, fué un caso en que los Estatutos Revisados del estado de Oklahoma, imponían castigos severos y acumulativos a aquellas personas que contratando con el estado, pagaran a sus obreros menos "del jornal corriente en la localidad en que se efectuaba el trabajo". Este estatuto fué declarado nulo por impreciso. La Corte Suprema cita de la opinión emitida en el de *United States* v. *Capital Traction Co.*, supra, así:

"El estatuto castiga el que las compañías ferroviarias del Distrito de Columbia operen un número insuficiente de carros para acomodar a las personas que deseen montar en los mismos, sin que haya aglomeración. ¿Qué servirá de guía a las cortes o al jurado al determinar qué constituye una aglomeración? Lo que puede ser considerado como aglomeración por un jurado puede no serlo por

otro. Lo que puede constituir un número suficiente de carros en opinión de un juez, puede ser considerado como insuficiente por otro. . . . Existe una ausencia total de la definición de lo que constituirá una aglomeración en un carro. Este importante elemento no puede dejarse a conjeturas, o ser suplido por la corte o el jurado. Va a la misma esencia de la ley, y sin él el estatuto resulta demasiado incierto e indefinido para sostener una acusación.''

En el caso de *State of West Virginia* v. *Lantz,* 26 A.L.R. 894, citando nuevamente del sumario, se dijo:

''Una ley de la legislatura (Leyes de 1921, capítulo 112) que castiga como delito el conducir un automóvil por cualquier curva de una vía pública sin tener el dominio del mismo o sin reducir la velocidad a una marcha razonable y adecuada, infringe los incisos 10 y 14 del Artículo 3 de la Constitución del estado y es nula por incierta e indefinida.''

Parece que el estatuto específico que se interpretaba en esa opinión era demasiado indefinido, y entre otros casos, la corte cita el de *United States* v. *Capital Traction Co.,* supra. En una nota al mismo en la página 905, el comentarista dice lo siguiente:

''En Texas, donde el Código Penal prescribe que su objeto es definir en términos claros todo delito cometido contra las leyes del estado así como que a fin de que el sistema penal pueda ser completo y de que no se recurra a ningún sistema extranjero de leyes escritas o no escritas, se dispone que ninguna persona será castigada por ninguna acción u omisión, a menos que la misma sea declarada delito público y se fije a ella una pena por la ley escrita del estado, se declaró nulo un estatuto a base de que era indefinido e incierto, proveyendo dicho estatuto que el conductor de un vehículo de motor conducirá o manejará tal vehículo en forma cuidadosa, y teniendo en cuenta la seguridad y conveniencia de los peatones y la de los vehículos que transiten por la vía pública.''

*State* v. *Diamond,* 20 A.L.R. 1527, envolvía la libertad de palabra y la corte cita del caso de *Czarra* v. *Medical Supervisors,* supra, y del de *United States* v. *Reese,* supra, así como del de *United States* v. *Capital Traction Co.*

Véase también *Cinadr* v. *State,* 300 S.W. 64, que cita otros casos de Texas, en que estaba envuelto el principio. Las palabras específicas del estatuto eran al efecto de que todo aquel que innecesariamente produzca la muerte de un animal es culpable de un delito.

*Stevenson* v. *Houston T.C.R. Co.,* 19 S.W. (2d) 207, fué un caso en que se resolvió que el Código Penal de Texas resultaba ineficaz por indefinido al prescribir como delito el manejar por la vía pública un vehículo de motor que no estuviese provisto de frenos adecuados y en buen funcionamiento.

La ley en el caso ante nos provee:

"Artículo 12.—(*a*) Las personas que manejen vehículos de motor en los caminos públicos, deberán, en todo tiempo, ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades."

Me parece que al amparo de las autoridades citadas el estatuto es nulo por indefinido. Toda persona que cometiera un acto de negligencia como en el caso de autos, y que ordinariamente estaría sujeta sólo a un pleito civil de daños y perjuicios, podría ser procesada por un delito público. No puedo creer que fuera la intención legislativa bajo el artículo citado hacer a las personas criminalmente responsables ante las cortes por negligencia. Si bien es cierto que dicho párrafo existe independientemente de los demás, y trata de imputar un delito separado, sin embargo bajo las decisiones mencionadas a mi entender no puede ser sostenido.

El caso de *Pueblo* v. *Borque,* 25 D.P.R. 594, tiende más bien a demostrar que es necesaria una infracción específica de uno de los otros párrafos.

No me parece que haya dos líneas de decisiones en la Corte Suprema de Estados Unidos. La verdadera regla ha sido expuesta a mi modo de ver en el caso de Cohen, supra. Luego, lo que la Corte Suprema de los Estados Unidos ha

hecho es decir en efecto, que ciertas bien conocidas infracciones no necesitan ulterior definición. Con los otros casos citados en la opinión de la mayoría no tengo disputa alguna. Ellos deciden que los estatutos que disponen que ciertas formas de correr a velocidad indebida constituyen un delito o cosa así, no necesitan mayor definición. Dichos casos no varían el principio de que es la legislatura y no las cortes quien debe decir qué es un delito y qué no lo es.